**Petition For a Writ of Habeas Corpus For Samuel RATNER, Petitioner,**

**v.**

**Chief Robert K. WEDDLE, Jailer, Los Angeles County Jail, Respondent.**

**Civ. No. 68–422.**

United States District Court
C. D. California.

April 19, 1968.

Burton C. Jacobson, Atkins & Jacobson, Beverly Hills, Cal., for petitioner.

John D. Maharg, County Counsel, Los Angeles, Cal., for respondent.

MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

On April 1, 1968, in the course of the hearing on the Petition for a Writ of Habeas Corpus filed on behalf of the petitioner, Samuel Ratner, the court observed a showing of the motion picture film that formed the basis for one of the three counts upon which he was convicted in the municipal court and of which he complains. This court has con-

cluded, and now finds with respect to the film, that:

(a) The dominant theme of the material taken as a whole appeals to a prurient interest in sex;

(b) The material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters;

(c) The material is utterly without redeeming social value.

Therefore, the film is adjudged obscene, according to the rule laid down in A Book Named "John Cleland's Memoirs" etc. v. Attorney General, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1, 5–6 (1966).

■ Counsel for the petitioner contends that a fourth test must be imposed, namely, whether the material " * * * goes substantially beyond customary limits of candor in description or representation of * * * " sex. Footnote No. 20 in the opinion of the Court in Roth v. United States, 354 U.S. 476, 487, 77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498, 1508 (1957), is cited as authority for this asserted rule. The footnote comment referred to is contained in a partial definition of obscenity that was quoted from the 1957 tentative draft of the A.L.I. Model Penal Code. Such quotation is preceded by the comment that the Court sees no difference between that definition and the meaning of obscenity as developed by the case law. Under these circumstances, it seems to me that the degree of "candor" is not a separate element that must be considered in addition to the three that are listed at the outset of this memorandum.

■ Assuming, for purposes of insuring full disposition of this matter, that I am wrong in the last stated conclusion, and that the matter of "candor" must be considered separately, its relevance to the matter at hand is somewhat obscure. The subject film portrayed, to an ad nauseam extent, the enthusiastic striking of the "bare behinds" of young women with the use of the open hand,

cane, paddle and bullwhip, the last mentioned weapon having been applied indiscriminately to virtually all parts of the mostly undraped figure. The performance was completely candid in portraying what was involved; it also reflected a revolting desecration of the human body. It is particularly in this latter respect that it seems to me to go beyond the acceptable standards that govern the three tests of obscenity (and the test of candor as well, if that is a separate guide).

This court announced such conclusion at the end of the hearing on April 1, 1968, and accordingly was prepared to deny the Petition for Habeas Corpus at that time. However, counsel for the petitioner urged upon the court the contention that the United States Supreme Court has reversed convictions involving publications of substantially the same type as those portrayed by the subject film. Inasmuch as my obligation is to follow the Supreme Court's lead as best I can in these matters, see Jacobellis v. Ohio, 378 U.S. 184, 188, 84 S.Ct. 1676, 1679, 12 L.Ed.2d 793, 798 (1964), I agreed to review such publications. Accordingly, the hearing was continued to the following Monday, April 8, 1968, at which time the petitioner's counsel showed another motion picture and presented fifteen booklets, all of which he represented to have been adjudged by the Supreme Court to be constitutionally protected.

The motion picture shows a scantily clad young woman going through various maneuvers on a bed in a manner that is obviously and inartfully designed to suggest to the viewer her desirability and availability as a companion in sexual intercourse. The performance, while doubtless very distasteful to many, is little different from what may be seen regularly at the burlesque theatre in almost any large city in the country (at least so I am told). The picture is substantially different from the one here concerned, in that the former completely lacks the portrayal of continuous and depraved trauma to the human body

which the latter emphasizes. The fact that the one is held to be constitutionally protected does not inherently save the other.

Most of the booklets do deal with flagellation and other tortures and indignities. However, while some of the portrayals display a depravity or bestiality comparable to the subject film, they lack its realism; the rest of the booklets have lifelike characters, but the element of trauma is relatively subdued. It seems to me that the booklets could well be considered boring or even disgusting without being offensive. But I still have enough faith in contemporary community standards to believe that such standards would be affronted at the sight of a full-grown man working up a perspiration by using a bullwhip on the naked flesh of a young woman. If this is not so, someone more worldly wise than I will have to make the pronouncement.

The Petition for a Writ of Habeas Corpus is denied.